150 P.3d 154 (2007)
E. John BENSON, d/b/a Elite Cellular, Appellant,
v.
OREGON PROCESSING SERVICE, INC., an Oregon corporation; Daniel J. Martin, individually and the marital community comprised of Daniel J. and Diane M. Martin, Respondents.
No. 34195-6-II.
Court of Appeals of Washington, Division 2.
January 9, 2007.
Joseph P. Zehnder, Lori Marie Bemis, McGavick Graves PS, Tacoma, WA, for Appellant.
Michael Wayne Johns, Davis Roberts & Johns PLLC, Gig Harbor, WA, for Respondents.
ARMSTRONG, J.
¶ 1 E. John Benson appeals the trial court's dismissal of his lawsuit against Oregon Processing Service, Inc. and Daniel J. Martin for allegedly violating RCW 19.190.020(1)(a), which prohibits commercial e-mail senders from sending Washington residents commercial e-mail that misrepresents or obscures information identifying the e-mail message's point of origin or transmission path. Because all the e-mail identified one of OPS's domain names and most of them contained an "unsubscribe link" and listed OPS's physical address and telephone number, the e-mail did not misrepresent or obscure any information identifying their points of origin or transmission paths. We affirm.

FACTS
¶ 2 E. John Benson does business as Elite Cellular, located in Pierce County, Washington. Benson registered and maintained the following e-mail addresses for business uses: john@elitecellular.com and sales@elitecellular.com. Benson registered these e-mail addresses with a registry that allows Washington residents to list e-mail addresses at which they do not wish to receive commercial e-mail.
*155 ¶ 3 Daniel Martin was the sole shareholder, financier, officer, and director of Oregon Processing Service, Inc. (OPS), an internet marketing business located in Grants Pass, Oregon. OPS registered and owned the domain names swordfishmedia.com, swordfishmedia.biz, mydailyoffer.com addresses that contained these domain names. OPS dissolved in March 2004.
Between September 2003 and March 2004, OPS sent Benson 251 unsolicited commercial e-mail messages. By December 6, 2003, at the latest, the unsolicited e-mail that OPS sent Benson included an "unsubscribe" link[1] and an address and phone number through which a recipient could unsubscribe from OPS's database. Clerk's Papers at 36.
Benson admits that he made a conscious decision not to write to the physical address listed in the unsolicited commercial e-mail and not to call the phone numbers listed in that e-mail. He also chose to reply to the e-mail rather than use the "unsubscribe" link contained within most of the e-mail OPS sent him. Each time Benson replied to OPS's commercial e-mail, he received a message stating that nobody received his reply.
¶ 6 Benson sued OPS, alleging that OPS violated chapter 19.190 RCW and Washington's Consumer Protection Act[2] when it sent him the unsolicited commercial e-mail. Benson then amended his complaint, adding Martin as a party and alleging that he assisted OPS in transmitting the commercial e-mail at issue. Benson claimed he had spent approximately 120 hours dealing with the e-mail, primarily in replying to the e-mail and documenting that he received messages stating that nobody received his reply. He did not reply to each single e-mail. OPS did not answer Benson's complaint, and the court entered a default order against OPS. OPS is not represented on this appeal.
¶ 7 Following a bench trial, the court ruled that Martin and OPS did not misrepresent or obscure any information identifying the 251 commercial e-mail messages' point of origin or transmission paths. Accordingly, it dismissed Benson's claims against Martin and OPS and entered findings of fact and conclusions of law.
¶ 8 The principal issue is whether Martin and OPS violated RCW 19.190.020(1)(a), which prohibits a person from sending Washington residents, or assisting in the transmission of, commercial e-mail that misrepresents or obscures any, information identifying the e-mail's point of origin or transmission path. Although Benson readily identified OPS from its domain names, he argues that OPS obscured the e-mail messages' points of origin because it never acknowledged his e-mail replies.

ANALYSIS

I. SCOPE OF RCW 19.190.020(1)(a)
¶ 9 Benson argues that the trial court misinterpreted RCW 19.190.020(1)(a). We review de novo a trial court's interpretation of a statute. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002) (citing State v. Breazeale, 144 Wash.2d 829, 837, 31 P.3d 1155 (2001)). In construing a statute, we look for the legislature's intent. Campbell & Gwinn, 146 Wash.2d at 9, 43 P.3d 4. We consider first the statute's wording; if plain and unambiguous, we do not look further. Agrilink Foods, Inc. v. Dep't of Revenue, 153 Wash.2d 392, 396, 103 P.3d 1226 (2005) (citing Bravo v. Dolsen Cos., 125 Wash.2d 745, 752, 888 P.2d 147 (1995)).
¶ 10 RCW 19.190.020(1)(a) provides:
(1) No person may initiate the transmission, conspire with another to initiate the transmission, or assist the transmission, of a commercial electronic mail message from a computer located in Washington or to an *156 electronic mail address that the sender knows, or has reason to know, is held by a Washington resident that:
(a) Uses a third party's Internet domain name without permission of the third party, or otherwise misrepresents or obscures any information in identifying the point of origin or the transmission path of a commercial electronic mail message.
Benson does not argue that Martin or OPS used a third party's internet domain name without that party's permission. See RCW 19.190.020(1)(a).
¶ 11 A person can learn the identity of a domain name registrant by visiting inter NIC.com. Through this service, Benson discovered that OPS had sent him commercial e-mail under the domain names: swordfishmedia.com, swordfishmedia.biz, mydailyoffer.com, and topofferz.net. Essentially, the trial court held that because Benson identified OPS as the sender of his 251 commercial e-mail messages, and a large portion of the e-mail messages contained "unsubscribe" links, OPS and Martin did not obscure or misrepresent any information identifying the e-mail messages' point of origin or transmission path.
¶ 12 Benson argues that the trial court's ruling ignores the statute's plain language. Specifically, he argues that the trial court narrowly read "misrepresent" and "obscure," when the legislature intended the terms to be read broadly. He notes that the legislature used three phrases, "Internet domain name," "point of origin," and "transmission path" but prohibited a sender from obscuring only the point of origin and transmission path. And this, according to Benson, shows that the legislature did not intend "to impose liability only on persons who misrepresented or obscured the internet domain name in spam e[-]mails." Br. of Appellant at 18. Benson concludes that we should read RCW 19.190.020(1)(a) to "impose liability on a broad range of behaviors that render the point of origin or the transmission path of spam e[-]mails useless." Br. of Appellant at 19.
¶ 13 Chapter 19.190 RCW does not define "misrepresent" or "obscure." Accordingly, we give those words their ordinary meaning. Prison Legal News, Inc. v. State Dep't of Corr., 154 Wash.2d 628, 640, 115 P.3d 316 (2005) (quoting New York Life Ins. Co. v. Jones, 86 Wash.2d 44, 47, 541 P.2d 989 (1975)). Webster's Third New International Dictionary defines "misrepresent" as "represent[ing] incorrectly: to give a false, imperfect or misleading representation." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY at 1445 (2002). And Webster's defines "obscure" as "to conceal or hide from view as by or as if by covering wholly or in part: make difficult to discern." WEBSTER'S at 1557. Finally, Webster's defines "any" as "all." WEBSTER'S at 97.
¶ 14 RCW 19.190.020(1)(a) says nothing about how useful a commercial e-mail's point of origin or transmission path must be. Specifically, the statute does not require a commercial e-mail sender to acknowledge or respond to a recipient's reply e-mail. Rather, the statute merely requires the sender to refrain from misrepresenting or obscuring the e-mail's point of origin or transmission path. Here, OPS's domain names are the e-mail messages' point of origin and each e-mail contains the transmission path from OPS's servers to Benson's e-mail addresses. And a person violates RCW 19.190.020(1)(a) only if he sends a commercial e-mail that misrepresents or obscures any information that identifies the commercial e-mail's point of origin or transmission path.
¶ 15 But Benson argues that OPS and Martin misrepresented and obscured the commercial e-mail messages' points of origin and transmission paths because, when he replied to the 251 e-mail messages, "his replies were undeliverable to the commercial e[-]mail addresses from which the" e-mail came. Br. of Appellant at 33. Because the statute does not require that Benson's e-mail replies be deliverable, the trial court did not err in concluding that OPS and Martin did not violate the statute.
¶ 16 Affirmed.
We concur: BRIDGEWATER, P.J., and PENOYAR, J.
NOTES
[1] A "link," "button," or "hyperlink" is "an electronic link providing direct access from one distinctively marked place in [an electronic] document to another in the same or a different document." MERRIAM-WEBSTER ONLINE (2006), http://www.m-w.com/dictionary/hyperlink. An "unsubscribe" link allows the recipient of an e-mail to notify the sender that the recipient does not wish to receive further e-mail from the sender.
[2] Chapter 19.86 RCW.