254 P.3d 824 (2011)
160 Wash.App. 722
Frederick J. FISCHER, Appellant,
v.
WASHINGTON STATE DEPARTMENT OF CORRECTIONS, Respondent.
No. 64818-7-I.
Court of Appeals of Washington, Division 1.
January 24, 2011.
Publication Ordered April 18, 2011.
Frederick J. Fischer, Monroe, WA, for Appellant.
Douglas Wayne Carr, Attorney at Law, Atty. General's Ofc., Olympia, WA, for Respondent.
LEACH, J.
¶ 1 Frederick Fischer appeals from the trial court order dismissing his action, alleging that the Department of Corrections (DOC) violated the Public Records Act, chapter 42.56 RCW. Because DOC established that its prison surveillance video recordings provide specific intelligence information whose nondisclosure is essential to effective law enforcement, the recordings are exempt from public disclosure. We therefore affirm.

*825 FACTS
¶ 2 Frederick Fischer is an inmate at the Washington State Department of Corrections Monroe Correctional Complex. He claims that on November 20, 2007, another inmate assaulted him in the law library, which is located in the Program and Activities Building (PAB). On December 3, 2007, Fischer's counsel faxed to DOC a request under the Public Records Act (PRA) for copies of surveillance video recordings made by specific cameras in the PAB at the time of the assault. DOC eventually denied the request, claiming the recordings were exempt from disclosure under the PRA.[[1]]
¶ 3 On June 10, 2008, after DOC denied his appeal, Fischer filed this action for violation of the PRA. The trial court eventually set a show cause hearing for October 14, 2009. After considering declarations from Fischer and Richard Morgan, a former prison superintendent and currently director of prisons division, the trial court dismissed Fischer's claim, concluding that DOC had satisfied its burden of demonstrating the surveillance recordings were exempt from disclosure under RCW 42.56.240(1):
The video recordings in question constitute specific intelligence information compiled by a law enforcement and penology agency and are exempt from disclosure pursuant to RCW 42.56.240(1). Disclosure of such recordings would negatively impact the DOC's ability to maintain security in its correctional facilities and to address infractions in those facilities.
Fischer now appeals.

DECISION
¶ 4 The PRA requires every state agency to disclose any public record upon request unless the record falls within a specific exemption.[[2]] Any agency withholding a public record bears the burden of demonstrating that a specific exemption applies.[[3]] Courts must construe the PRA liberally and its exemptions narrowly.[[4]] In reviewing a PRA request, we stand in the same position as the trial court and review an agency's decision to withhold records de novo.[[5]]
¶ 5 RCW 42.56.240(1) exempts from public disclosure "[s]pecific intelligence information. . . compiled by investigative, law enforcement, and penology agencies . . . the nondisclosure of which is essential to effective law enforcement."[[6]] In his supporting declaration, Fischer alleged that
The video surveillance system in the PAB includes about thirteen (13) cameras, a 20" monitor and a hard-drive. The monitor and hard-drive are set up at a desk right by the front door to the building. The monitor faces the door and can be seen by anyone who wants to look at it. It shows the footage from all cameras simultaneously and in real time. Everyone can see the camera angles, blind spots, picture quality and surveillance coverage. Any inmate who goes into the library can take a position at the bookshelf and watch the monitor indefinitely.
¶ 6 On appeal, Fischer does not dispute that DOC is a law enforcement or penology agency, that the surveillance videos constitute intelligence information, or that surveillance videos are essential to DOC's ability to undertake effective law enforcement.[[7]] *826 Rather, his sole contention is that DOC failed to satisfy its burden of demonstrating that nondisclosure of the surveillance videos in the PAB is "essential to effective law enforcement" because DOC allows inmates to view the same information on a video monitor located in the PAB.
¶ 7 In opposing Fischer's PRA request, DOC relied on the declaration of Richard Morgan, who stated that surveillance cameras provide intelligence information that is used for prison investigations, prison infractions, and criminal prosecutions and that the electronic surveillance systems, including fixed cameras, were "an essential element of effective control of a population that is 100% criminal in its composition and is accustomed to evading detection and exploiting the absence of authority, monitoring, and accountability." Morgan explained that because DOC does not have the resources to monitor all areas 24 hours a day, the effectiveness of the system depends on preventing inmates from learning its capabilities and limitations:
Not all surveillance cameras in DOC facilities are actively monitored by staff. Some cameras are only monitored by staff and create no recordings. Some cameras are only recorded during specific times of day and not others. Some camera stations (camera housings such as boxes and bubble housings) do not contain cameras at all. Some cameras have poor resolution or can be out of service. Some cameras have very narrow fields of view, while others have wide fields of view. Some are PTZ (pan, tilt, & zoom) which have powerful abilities to capture fine detail at long distances. Some are controlled by the person monitoring the camera. Some pan a wide field automatically. Some cameras are so well hidden, they are not suspected by offenders to be present. On the other hand, rumors abound among inmates that there are cameras where none exist.
According to Morgan, providing access to surveillance videos would allow inmates to determine weaknesses and exploit those weaknesses by assaulting other inmates or committing crimes and prison infractions.
¶ 8 Contrary to Fischer's contentions, the images on a monitor do not provide the same information as surveillance videos. As the trial court correctly recognized in rejecting Fischer's claim, real-time images do not reveal which cameras are recording, the hours of recording, the resolution and field of view of recording cameras, or staff members' ability to control specific cameras. Nor do such images reveal which cameras are not being actively monitored, the location of hidden cameras, which cameras are not working, or which camera housings are empty. Consequently, even if the real-time images on the monitor are as accessible as Fischer claims, they provide virtually no meaningful information about the specific recording capabilities of DOC's surveillance system in the PAB.
¶ 9 In construing the "specific investigative records" exemption under the public disclosure act, former RCW 42.17.310(1)(d), our Supreme Court reiterated the requirement that "law enforcement" be construed narrowly, rejecting DOC's suggestion that all prison operations fall within the scope of law enforcement.[[8]] The court noted that the ordinary meaning of "law enforcement" includes "`[t]he act of putting . . . law into effect,'"[[9]] "`the imposition of sanctions for illegal conduct,'"[[10]] and "`[t]he detection and punishment of violations of the law.'"[[11]]
¶ 10 Here, as set forth in Morgan's unrefuted affidavit, DOC's statutory obligations include carrying out the terms of court-ordered *827 sentences and detecting and punishing violations of the law. Intelligence information provided by video surveillance systems therefore falls squarely within the core definitions of "law enforcement." Concealment of the full recording capabilities of those systems is critical to its effectiveness in the specific setting of a prison. An inmate's ability to view certain real-time images on a prison monitor does not reveal the capabilities or limitations of the prison surveillance systems. Under the circumstances, DOC has satisfied its burden of demonstrating that nondisclosure of that information is essential to effective law enforcement.
¶ 11 Affirmed.
¶ 12 WE CONCUR: DWYER, C.J., and BECKER, J.
NOTES
[1] Only one of the six requested surveillance recordings exists. The remaining recordings were deleted during normal DOC operations.
[2] See Lindeman v. Kelso Sch. Dist. No. 458, 162 Wash.2d 196, 201, 172 P.3d 329 (2007); RCW 42.56.070(1).
[3] See Prison Legal News, Inc. v. Dep't of Corr., 154 Wash.2d 628, 636, 115 P.3d 316 (2005).
[4] Lindeman, 162 Wash.2d at 201, 172 P.3d 329.
[5] See Lindeman, 162 Wash.2d at 200-01, 172 P.3d 329; RCW 42.56.550(3). The trial court may conduct the show cause hearing solely on the basis of affidavits. RCW 42.56.550(3).
[6] RCW 42.56.240(1) exempts the following information from public disclosure: "Specific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."
[7] See King Cnty. v. Sheehan, 114 Wash.App. 325, 337, 57 P.3d 307 (2002) (construing "intelligence information" narrowly under former RCW 42.17.310(1)(d) to include information compiled in an effort to prevent and monitor possible criminal activity).
[8] Prison Legal News, 154 Wash.2d at 643, 115 P.3d 316 (providing medical care to inmates and disciplining medical employees do not constitute law enforcement).
[9] Prison Legal News, 154 Wash.2d at 640, 115 P.3d 316 (alterations in original) (quoting Brouillet v. Cowles Publ'g Co., 114 Wash.2d 788, 795, 791 P.2d 526 (1990)).
[10] Prison Legal News, 154 Wash.2d at 640, 115 P.3d 316 (quoting Brouillet, 114 Wash.2d at 796, 791 P.2d 526).
[11] Prison Legal News, 154 Wash.2d at 640, 115 P.3d 316 (quoting BLACK'S LAW DICTIONARY 901 (8th ed. 2004)).