FILED
COURT OF APPEALS
DIVISION II

2014 SEP 16 AM 10: 00

STATE OF WASHINGTON

BY
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LIBBY HAINES-MARCHEL, | No. 43700-7-II |
| Appellant, | PUBLISHED OPINION |
| v. | |
| STATE, DEPARTMENT OF CORRECTIONS, | |
| Respondent. | |

BJORGEN, J. — Libby Haines-Marchel, wife of inmate Brock Marchel, appeals an order denying her motion for summary judgment and granting the Department of Corrections' cross-motion for summary judgment. This summary judgment upheld redactions made by the Department in documents requested by Haines-Marchel under the Public Records Act (PRA), chapter 42.56 RCW. The superior court found the redacted material was exempt from disclosure under RCW 42.56.240, because nondisclosure was essential to effective law enforcement and protection of personal privacy and because disclosure would endanger individuals' lives or physical safety.

On appeal, Haines-Marchel contends that the superior court abused its discretion by failing to consider all the materials she submitted, that the Department failed to show the claimed exemptions apply to the redacted material, and that her legitimate interest in obtaining the information outweighs the Department's concerns. We hold that the superior court did not fail to consider any submitted documents, but that a small portion of the redacted material is not exempt

from disclosure under RCW 42.56.240(1) and should have been disclosed to Haines-Marchel. The rest of the redacted material is exempt from disclosure. Consequently, we affirm in part, reverse in part and remand for the superior court to enter an order requiring the Department to disclose the material held not to be exempt from disclosure and to exercise its discretion in awarding attorney fees and a penalty to Haines-Marchel under RCW 42.56.550(4).

## FACTS

After Haines-Marchel visited Marchel at the Clallam Bay Corrections Center (CBCC), prison authorities subjected Marchel to a "dry cell search," an isolation and special supervision procedure designed to determine whether an inmate has concealed contraband by ingesting it. Clerk's Papers (CP) at 20-31, 35. After three days in the dry cell, monitoring revealed no contraband, and prison staff returned Marchel to his usual cell.

In response to a grievance he filed, Marchel received a copy of form DOC 05-392, describing the basis for the decision to subject him to the dry cell search, comprised of a Confidential Information Report (Report) on the front side and a Guide to the Evaluation of Reliability of Informant Information (Guide) on the back. The Report stated that three inmates, whose identifying information had been redacted, had at various times informed the prison's intelligence and investigation unit that Marchel "was to be introducing narcotics to CBCC through visitor [Haines-Marchel], during a visit." CP at 42. The Report also contained "yes" or "no" answers to questions concerning the reliability of the unidentified informants. CP at 42. The Guide contained various criteria prison officials use to evaluate informant tips, with the scoring numbers entered by the preparer indicating the relative applicability of each criterion under the circumstances presented. For example, for the criterion "Source Reliability,

2

Authenticity," the preparer would choose from five levels ranging from "[n]o doubt source has direct access to information" to "[s]ource unknown." CP at 43. The Guide also required the preparer to check one of five levels of reliability for the informant and for the validity of the content. Both the Report and the Guide relating to the dry cell search, filled out by department official William Paul, were released to Marchel.

Haines-Marchel subsequently submitted a request under the PRA for documents concerning the dry cell search, including "all information and documents received by internal investigations (I&I) that lead [sic] to the belief of reasonable suspicion to place Marchel . . . on Dry Cell Watch." CP at 57. In response, Haines-Marchel received 43 pages of documents, including a copy of the same document containing the Report and the Guide given to Marchel. The copy sent to Haines-Marchel, however, was entirely redacted except for the titles, Department logos, document numbers and identifying information, two lines of instructions to the preparer on the Report, and a boilerplate statement on the Guide relating to disclosure.

Haines-Marchel appealed the redactions to the Department, which denied the appeal on the ground that the documents were exempt from disclosure under RCW 42.56.240(1) and (2). She then filed suit in superior court to compel disclosure of some of the redacted material, requesting costs, penalties, and attorney fees. CP at 5-17. In support of her motion for summary judgment, she attached various documents, including the less-redacted version of the disputed document provided to Marchel and various declarations, including her own and Marchel's.

The Department answered Haines-Marchel's motion and moved for summary judgment, attaching declarations from CBCC officials William Paul and Denise Larson in support of its argument that the redactions were appropriate. These declarations explained the potential

No. 43700-7-II

dangers posed by releasing information concerning confidential informants and by disclosing the Department's criteria for evaluating tips from such informants. The Department also asserted that Marchel had received the less-redacted versions in error.

After argument, the superior court reserved ruling because the judge had not been able to review all the submitted materials. The court issued a letter opinion two weeks later denying Haines-Marchel's motion and granting summary judgment to the Department. The opinion relied primarily on Paul's declaration in finding the redactions appropriate under both RCW 42.56.240(1) and (2). The court subsequently entered a written order to the same effect. Haines-Marchel timely appeals.

## ANALYSIS

### I. STANDARD OF REVIEW AND GOVERNING LAW

We review summary judgments de novo and in that review perform the same inquiry as the superior court. *TracFone Wireless, Inc. v. Dep't of Revenue*, 170 Wn.2d 273, 280-81, 242 P.3d 810 (2010). A court should grant summary judgment only if

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

CR 56(c). A material fact is one upon which the outcome of the litigation depends in whole or in part. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dir. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

A party moving for summary judgment bears the burden of demonstrating that there is no

4

genuine issue of material fact. *Atherton*, 115 Wn.2d at 516. If the moving party satisfies its burden, the nonmoving party must present evidence that demonstrates that material facts are in dispute. *Atherton*, 115 Wn.2d at 516. If the nonmoving party fails to do so, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

The court must consider all facts, and the reasonable inferences from them, in the light most favorable to the nonmoving party. *Vallandigham*, 154 Wn.2d at 26; *Atherton*, 115 Wn.2d at 516. A court should grant summary judgment only if reasonable persons could reach but one conclusion from all the evidence. *Vallandigham*, 154 Wn.2d at 26.

Courts also review an agency's denial of the opportunity to inspect or copy public records under the PRA de novo. RCW 42.56.550(3). In reviewing such agency action, the superior court "may conduct a hearing based solely on affidavits," RCW 42.56.550(3), and

> [t]he burden of proof shall be on the agency to establish that refusal to permit public inspection and copying is in accordance with a statute that exempts or prohibits disclosure in whole or in part of specific information or records.

RCW 42.56.550(1). The PRA "is a strongly worded mandate for broad disclosure of public records" that requires state agencies to disclose any public record upon request, unless the record falls within certain specific exemptions. *Prison Legal News, Inc. v. Dep't of Corr.*, 154 Wn.2d 628, 635, 115 P.3d 316 (2005). A reviewing court must construe the PRA broadly and its exemptions narrowly. *Prison Legal News*, 154 Wn.2d at 636.

No. 43700-7-II

## II. Review of Summary Judgment Pleadings

As a threshold matter, Haines-Marchel argues first that the superior court's letter opinion of May 23, 2012 shows that it did not review all of her exhibits and affidavits, resulting in an abuse of discretion. We disagree.

The letter opinion plainly shows that in the portions cited by Haines-Marchel, the court was referring to evidence it had reviewed prior to the *hearing* on the summary judgment motions:

> Prior to considering verbal argument from the parties, the Court reviewed the court file and was familiar with the pleadings therein. The Court had not, however, reviewed the various exhibits attached to some of those pleadings. The Court reviewed the electronic version of the court file and that version did not, for whatever reason(s), contain the exhibits.

Clerk's Papers (CP) at 229. The superior court made clear that it reviewed all submitted materials before deciding the motions. In particular, at the conclusion of the hearing the court stated,

> When I took the bench this afternoon . . . my inclination was to conduct an in camera review. That inclination was based upon the fact that I had not reviewed the exhibits at issue here.
> . . . .
> So I will take the time to look at these exhibits with a keen eye, but I wanted to make certain that the issue was properly framed.
> . . . .
> I am going to take it under advisement, issue a written ruling.
> As a general rule, I am loath[] to take matters under advisement.
> . . . .
> And again, I apologize for not having--I guess the lesson I have learned now is to look at the physical court file, which I don't like to do, because it is easier for me to just look at it electronically.

6

Verbatim Report of Proceedings (VRP) at 44-49. Contrary to Haines-Marchel's understanding, then, the subsequent letter opinion in no way suggests that the superior court did not review all of the documents submitted prior to making a decision.

In addition, the final written order by the superior court specifies that it reviewed:

1. Plaintiff's Motion for Partial Summary Judgment, including the attached Declarations of Michael C. Kahrs, Brock Marchel and Libby Haines-Marchel;
2. Defendant's Response to Plaintiff's Partial Motion and Cross-Motion for Summary Judgment, including the attached Declarations of William Paul and Denise Larson;
3. Plaintiff's Reply to Defendant's Response to Plaintiff's Partial Motion, including the attached Declaration of Libby Haines-Marchel;
4. Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment;
5. Defendant's Reply to Plaintiff's Response to Defendant's Cross-Motion for Summary Judgment, including the attached Declaration of Denise Vaughan.

CP 232-33. All of the documents Haines-Marchel contends the court did not consider appear, or were attached to documents that appear, in that list.

The record shows that the superior court considered all the evidence submitted by the parties in support of their motions for summary judgment. The court did not abuse its discretion by failing to consider all material submitted.

### III. THE PRA EXEMPTIONS

The superior court held that the redactions were proper under the exemptions to disclosure found in RCW 42.56.240(1) and (2). Because we agree that the redacted material was exempt under RCW 42.56.240(1), we do not reach whether it also was exempt under (2) of that section.

RCW 42.56.240(1) exempts the following material from disclosure under the PRA:

7

> [s]pecific intelligence information and specific investigative records compiled by . . . penology agencies . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy.

The parties do not dispute that the Department qualifies as a penology agency or that it compiled the records. Thus, the remaining issues are (1) whether the redacted information qualifies as either specific investigative records or specific intelligence information, and (2) whether redaction is essential to effective law enforcement or for the protection of any person's right to privacy.[1]

Records are "'specific investigative records'" if "'compiled as a result of a specific investigation focusing with special intensity upon a particular party.'" *Dawson v. Daly*, 120 Wn.2d 782, 792-93, 845 P.2d 995 (1993) (quoting *Laborers Int'l Union, Local 374 v. Aberdeen*, 31 Wn. App. 445, 448, 642 P.2d 418 (1982)). The exemption in RCW 42.56.240(1) applies to 'all investigations "'designed to ferret out criminal activity or to shed light on some other allegation of malfeasance.'" *Sargent v. Seattle Police Dep't*, 179 Wn.2d 376, 391, 314 P.3d 1093 (2013) (quoting *Koenig v. Thurston County*, 175 Wn.2d 837, 843, 287 P.3d 523 (2012)).

The material entered in both the Report and the Guide that discloses information about the informants or the investigation was compiled as part of a specific investigation focusing on potential criminal activity by both Marchel and Haines-Marchel. Thus, under both *Daly* and *Sargent* this material would count as specific investigative records. In addition to the name and identifying number of the informants, this material would include the description of the information given by the informant, answers to the questions on the Report, the text entered on

---

[1] Because our decision rests on whether the redacted material was essential to effective law enforcement, we do not reach the question of privacy.

8

the "Report subject" and "Date of occurrence" lines on the Guide, and all the numeric scores, conclusions about reliability, and hand-printed notes on the Guide. CP at 43. Similarly, the dates on both the Report and the Guide were compiled as the result of this specific investigation into this specific alleged crime. They also qualify as specific investigative records under *Daly* and *Sargent*. *Daly*, 120 Wn.2d at 792-93; *Sargent*, 179 Wn.2d at 391.

The pre-printed text on either the Report or the Guide, however, would not qualify as specific investigative records, since it was not compiled as a result of a specific investigation focusing with special intensity upon a particular party. *Dawson*, 120 Wn. 2d at 792-93. This material would only be exempt under RCW 42.56.240(1) if it qualifies as specific intelligence information.

The meaning of "specific intelligence information" was plumbed in *King County v. Sheehan*, 114 Wn. App. 325, 337, 57 P.3d 307 (2002), which examined whether a list of the full names of King County police officers was specific intelligence information under the predecessor of RCW 42.56.240. In the absence of a definition in the records statute, the court noted the definition of "intelligence" in the *Random House Unabridged Dictionary* (1993) as "the gathering or distribution of information, especially secret information," or "information about an enemy" or "the evaluated conclusions drawn from such information." *Sheehan*, 114 Wn. App. at 337. Except for those working undercover, the court held that a list of officers' names was not specific intelligence information under these definitions. *Sheehan*, 114 Wn. App. at 338-39. *Sheehan* did not rule on whether information about *how* a police agency carries out investigations qualifies as specific intelligence information.

That issue was reached in *Fischer v. State, Department of Corrections*, 160 Wn. App. 722, 727-28, 254 P.3d 824 (2011) and *Gronquist v. State, Department of Corrections*, 177 Wn. App. 389, 400-01, 313 P.3d 416 (2013), *review denied*, 180 Wn.2d 1004 (2014), which held that prison video surveillance recordings were exempt from disclosure under RCW 42.56.240(1) as intelligence information. Neither *Fischer* nor *Gronquist* rested its conclusion on the nature of the activities shown on the tapes. Instead, the decisions relied on the information about investigative methods that would be disclosed, such as which cameras were recording, which were dummies, when cameras were off or on, their resolution and field of view, and the extent to which they were controlled by the staff, knowledge which could help in their evasion. *See Fischer*, 160 Wn. App. at 726; *Gronquist*, 177 Wn. App. at 399-400.

Similarly, as shown by Paul's uncontroverted declaration, information about how the Department evaluates the reliability and authenticity of informant tips could be used to better mask false or deceptive information. Just as the surveillance tapes would disclose the Department's methods of surveillance, much of the pre-printed information[2] on the forms would disclose its methods of evaluating and responding to informants' tips. If the surveillance tapes count as specific intelligence information for that reason, so would this pre-printed material on the Report and the Guide. Almost all the pre-printed text on both the Report and the Guide is of this nature. On the Report, this information would include the pre-printed text asking for the nature of the information given and the questions about the informant. On the Guide, this information would include all pre-printed text below the line marked "Premise" and above the

---

[2] By pre-printed we mean the text on the forms other than the comments and answers entered by DOC about a specific individual, as described in more detail in the Facts, above.

10

line beginning "The contents of this document may be eligible for public disclosure," information going directly to the Department's methods of evaluating and responding to informants' tips. CP at 42. The content of this pre-printed material in the Guide is described in more detail in the Facts, above.

Having concluded this pre-printed material is intelligence information, the next question is whether it is "specific" intelligence information as required by RCW 42.56.240(1). This material is plainly not specific in the sense required for the exemption of specific investigative records, since it does not focus "with special intensity upon a particular party," as required by *Dawson*, 120 Wn.2d at 792-93. Use of the same definition of "specific" in each context, however, would ignore the divergent natures of the terms modified. As shown, under *Fischer*, 160 Wn. App. at 726-28, and *Gronquist*, 177 Wn. App. at 399-401, intelligence information can include information about methods of investigation, while investigative records must focus on a particular party. By their nature, the methods of investigation at issue here apply to all informant tips in the prison. If information about general methods must focus on a particular individual, it would never be exempt, contrary to both *Fischer* and *Gronquist*. Further, such a reading would risk shrinking the scope of intelligence information to that of investigative records, reducing the former to the superfluous. This would offend the canon of statutory construction that courts should avoid interpretations of a statute that render certain provisions superfluous. *See Whatcom County v. City of Bellingham*, 128 Wn.2d 537, 546, 909 P.2d 1303 (1996). To avoid these snares, the term "specific" in the exemption for specific intelligence information must be read to require not that the information concern particular individuals, but that it disclose particular methods or procedures for gathering or evaluating intelligence information. The pre-printed text

11

described above dealing with methods of evaluating informant statements meets this requirement.

The remaining question, then, is whether the specific intelligence information or specific investigative records described above are essential to effective law enforcement under RCW 42.56.240(1). The Department argues that the redacted information is essential to effective law enforcement for three reasons. First, if other inmates obtained the information entered on the form, they could use it, alone or in combination with other knowledge, to deduce the identity of and retaliate against the informants. Similarly, the Department contends that making the information entered on the forms available to the public, even with identifying information redacted, would have a "chilling effect" on potential informants, who would fear that their enemies could nonetheless piece together the source of the tip using the unredacted information. Br. of Resp't at 22. Finally, the Department maintains that disclosure of the form itself, even with no specific information entered on it, would reveal how the Department evaluates informant tips, allowing inmates who wish to submit deceptive tips, falsely implicating others in wrongdoing, to tailor their statements so that investigators would consider them reliable.

Haines-Marchel contends that "[t]he [D]epartment is fully capable of the minimal redaction necessary to protect the identity and safety of the informant," and that the only information that should be exempt from disclosure is the names and inmate numbers of the informants. Br. of Appellant at 24-25. Haines-Marchel points out that she is not an inmate, and that the Department need not worry about inmates obtaining the document because the Department censors inmates' incoming mail. She further argues that the Department's concerns are outweighed by her interest in discovering whether the Department arbitrarily accused her of

committing a felony based on a convicted felon's false and unreliable information. Finally, Haines-Marchel argues that, because the Department's own policy entitles an inmate subjected to a dry cell search to a summary of the information giving rise to the reasonable suspicion, and because CBCC officials actually released the form at issue here to Marchel, the Department should not be allowed to withhold it.

The uncontroverted evidence submitted by the Department establishes that redaction of the material found above to be either specific investigative records or specific intelligence information is essential to effective law enforcement.[3] Paul's declaration shows that serious attacks against inmates suspected of providing tips to authorities often occur and that inmates often submit false reports intended to induce authorities to take action against other inmates. As Paul points out, such details as the number of different informants, the date on which the form was completed, and whether the information is "first hand," could reveal the identity of the informant when combined with information from other sources. CP at 163. Further, even with redactions, the fact that the form could be released at all would likely make potential informants reluctant to come forward. *See Cowles Publ'g Co. v. Pierce County Prosecutor's Office*, 111 Wn. App. 502, 509, 45 P.3d 620 (2002). Finally, Paul's declaration establishes also that disclosure of the pre-printed information on the forms about how the Department evaluates the reliability and authenticity of informant tips could aid in disguising false or deceptive information. Out of all possible indicia of reliability which investigators might use to evaluate an informant's tip, the knowledge of what information in a tip will be considered and how

---

[3] Haines-Marchel did not submit evidence that the redacted material was *not* essential to effective law enforcement. Thus, there is no genuine dispute as to this material fact.

investigators will weigh that information could easily be valuable in crafting a false accusation. As concealment of the methods of video surveillance was essential to effective law enforcement in *Fischer*, 160 Wn. App. at 728, so concealment of the methods of examining and evaluating informant tips is essential here.

Turning to Haines-Marchel's other arguments, the Department's surveillance of inmates' mail would not necessarily prevent prisoner access to the information were it publicly available. Someone could simply read the form to the prisoner over the phone or memorize the criteria and relay them during a visit. Exempting the form from disclosure under the PRA may well be the only way to keep its contents out of inmates' hands.

Similarly, the release of some of the redacted information to inmates subjected to dry cell searches and the prior disclosure of the form to Marchel does not establish that keeping it confidential is not essential to effective law enforcement. First, the Department points out that the uncontested evidence shows that CBCC staff released the form to Marchel in error. Second, the fact that an agency releases documents, whether through a records request or some other process, does not by itself establish the absence of an exemption. *See Sanders v. State*, 169 Wn.2d 827, 849-50, 240 P.3d 120 (2010) ("Nor do we believe that production of documents after the requester files suit ipso facto admits that the initial withholding of the documents was wrongful.").

Next, Haines-Marchel's assertion that her interest outweighs the Department's is irrelevant to the exemption at issue here. The authority she cites in support of this argument deals with the statutory exemption for "[p]ersonal information in files maintained for employees, appointees, or elected officials of any public agency to the extent that disclosure would violate

their right to privacy." RCW 42.56.230(3). When an agency claims an exemption based on a person's right to privacy, the exemption applies only "if disclosure of information about the person: (1) [w]ould be highly offensive to a reasonable person, and (2) is not of legitimate concern to the public." RCW 42.56.050. The legislature did not impose these requirements on the exemptions of RCW 42.56.240. Thus, the legitimacy of Haines-Marchel's interest in obtaining the form is simply not relevant.

Haines-Marchel argues also that *Sargent* held that RCW 42.56.240 does not exempt the identities of witnesses from disclosure. *Sargent*, however, did not make such a broad ruling. Rather, it held that "[a] general contention of chilling future witnesses is not enough to exempt disclosure." *Sargent*, 179 Wn. 2d at 395. Here, in contrast, Paul's declaration establishes that disclosure of information about prison informants would threaten their safety and inhibit future informants from coming forward.

Finally, Haines-Marchel makes a persuasive argument that some of the information redacted by the Department cannot be deemed essential to effective law enforcement under any reasonable view. First, the Department does not specifically argue that the disclosure of Marchel's name and number to his wife, to himself, or to any other individual is somehow essential to law enforcement. Similarly, the name of the crime or rule violation in the Report and the pre-printed material in the Report inquiring into whether an infraction was written and how it was resolved has no discernible relation to effective law enforcement. Finally, the Department makes no argument that redacting Paul's signature is essential to effective law enforcement.

Consequently, Marchel's name and number in the Report, the name of the crime or rule violation in the Report, the pre-printed material in the Report inquiring into whether an infraction

was written and its results, and Paul's signature on both the Report and the Guide do not fall within any claimed exemption to disclosure.[4] The redaction of this material, therefore, violated RCW 42.56.070(1), the principal disclosure requirement of the PRA.

Turning to the matter of remedies, our Supreme Court has made clear that

> [t]he fact that the requesting party possesses the documents does not relieve an agency of its statutory duties, nor diminish the statutory remedies allowed if the agency fails to fulfill those duties.

*Neighborhood Alliance of Spokane County v. Spokane County*, 172 Wn. 2d 702, 727, 261 P.3d 119 (2011). Thus, even though Haines-Marchel already obtained the improperly withheld material through Marchel, we must remand for entry of an order directing the Department to disclose it to Haines-Marchel.

Another set of remedies available to those prevailing against an agency under the PRA is announced in RCW 42.56.550(4), which states:

> [a]ny person who prevails against an agency in any action in the courts seeking the right to inspect or copy any public record . . . shall be awarded all costs, including reasonable attorney fees, incurred in connection with such legal action. In addition, it shall be within the discretion of the court to award such person an amount not to exceed one hundred dollars for each day that he or she was denied the right to inspect or copy said public record.

A party prevails under this statute if "the records should have been disclosed on request."

*Spokane Research & Def. Fund v. City of Spokane*, 155 Wn.2d 89, 103, 117 P.3d 1117 (2005).

Under RCW 42.17.340(4), the predecessor to this statute, a party was deemed prevailing even

---

[4] The Department does not argue that redaction of this material is needed to protect Marchel's or Paul's right to privacy. The Department does argue in footnote 3 of its brief that the redactions in general are needed to protect the informants' privacy because disclosure would place them in danger. The Department, however, does not argue that disclosure of Marchel's name or number, the name of the crime or rule violation, the pre-printed material inquiring into whether an infraction was written and its results, or Paul's signature would place any informants in danger.

though it succeeded on only one relatively minor violation. *Citizens For Fair Share v. State, Dep't of Corr.*, 117 Wn. App. 411, 436-37, 72 P.3d 206 (2003). The present statute is the same as its predecessor as applicable to this issue. Therefore, Haines-Marchel must be deemed to have prevailed under RCW 42.56.550(4).

The amount of attorney fees and any penalty to be awarded to a prevailing party under RCW 42.56.550(4) is within the discretion of the superior court. *See Neighborhood Alliance*, 172 Wn.2d at 728. An award of attorney fees "should relate only to that which is disclosed and not to any portion of the requested documents found to be exempt . . ." *Limstrom v. Ladenburg*, 136 Wn.2d 595, 616, 963 P.2d 869 (1998) (citations omitted). Thus, in determining the amount of the attorney fees award, the superior court must take into account the relatively large share of the redacted material that we hold was properly withheld. In determining the amount of the penalty award, "'the existence or absence of [an] agency's bad faith is the principal factor which the trial court must consider.'" *Yousoufian v. Office of Ron Sims (Yousoufian V)*, 168 Wn.2d 444, 460, 229 P.3d 735 (2010) (quoting *Amren v. City of Kalama*, 131 Wn.2d 25, 37-38, 929 P.2d 389 (1997)). In setting the penalty award, the trial court must also consider the mitigating and aggravating factors set out by the court in *Yousoufian* V, 168 Wn.2d at 467-68.

CONCLUSION

In the Report, the name and identifying number of the informants, the description of the information given by the informants, the answers to the questions, and the date are specific investigative records which are essential to effective law enforcement and are consequently exempt from disclosure under RCW 42.56.240(1).

In the Guide, the "Report subject," "Date of occurrence," and "Date" entries and all the numeric scores, conclusions about reliability, and hand-printed notes are specific investigative records that are essential to effective law enforcement and are consequently exempt from disclosure under RCW 42.56.240(1). CP at 43.

On the Report, the pre-printed text asking for the nature of the information given and the questions about the informant is specific intelligence information which is essential to effective law enforcement and is consequently exempt from disclosure under RCW 42.56.240(1). On the Guide, all pre-printed text below the line marked "Premise" and above the line beginning "The contents of this document may be eligible for public disclosure . . ." is specific intelligence information which is essential to effective law enforcement and is consequently exempt from disclosure under RCW 42.56.240(1). CP at 43.

However, Marchel's name and number in the Report, the name of the crime or rule violation in the Report, the pre-printed material in the Report inquiring into whether an infraction was written and its results, and Paul's signature on both the Report and the Guide do not fall within any claimed exemption to disclosure. The redaction of this material violated RCW 42.56.070(1).

We accordingly affirm in part, reverse in part and remand for the superior court to enter an order requiring the Department to disclose the following to Haines-Marchel: Marchel's name and number in the Report, the name of the crime or rule violation in the Report, the pre-printed material in the Report inquiring into whether an infraction was written and its results, and Paul's

No. 43700-7-II

signature on both the Report and the Guide. On remand, the superior court shall also exercise its discretion in awarding attorney fees and a penalty to Haines-Marchel under RCW 42.56.550(4).

BJORGEN, J.

We concur:

WORSWICK, J.

JOHANSON, C.J.

19