IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| BRIAN GREEN and CONNOR GREEN,<br><br>Appellants,<br><br>v.<br><br>STATE OF WASHINGTON<br>DEPARTMENT OF CORRECTIONS,<br><br>Respondent. | No. 86878-1-I<br>(Consolidated with<br>No. 87312-1-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Brian and Connor Green appeal from the dismissal of their respective actions against the Department of Corrections (DOC) for violation of the Public Records Act, chapter 42.56 RCW. The Greens assert that the surveillance video footage they requested was not exempt from public disclosure under RCW 42.56.240(1). On the record presented, the Greens do not demonstrate any error. Accordingly, we affirm the decisions of the trial court.

FACTS

Brian and Connor Green each submitted a public records request to DOC for "Any and all records of any and all video and/or audio recordings made on 19 July 2023 in and/or around the DOC Office located at 6135 Martin Way E suite a, Lacey, WA 98503." DOC responded to both requests informing the Greens that it did not possess any audio recordings and that it was withholding all video per RCW 42.56.240(1) and

RCW 42.56.420(2).

The Greens separately filed suit against DOC for violation of the Public Records Act, alleging that DOC had unlawfully withheld the requested video. DOC argued otherwise, asserting that the videos constituted "specific intelligence information" exempt from disclosure under RCW 42.56.240(1) as well as security information concerning a correctional facility exempt from disclosure under RCW 42.56.420(2). In support of its arguments, DOC submitted the declaration of Mac Pevey, assistant secretary for the community corrections division of DOC. Pevey explained that not all of DOC's cameras possessed the same recording capability:

> Some cameras have recording capabilities and others do not. Some camera stations (camera housings such as boxes and bubble housings) do not contain cameras at all. Some cameras have poor resolution or may be out of service. Some cameras have very narrow fields of view, while others have wide fields of view. Some are PTZ (pan, tilt, & zoom) which have powerful abilities to capture fine detail at long distances. Some are controlled by the person monitoring the camera. Some pan a wide field automatically. Some cameras are so well hidden, they are not suspected to be present.

Pevey further explained that surveillance, or at least the appearance of surveillance, was a powerful deterrent to criminal behavior, including acts of violence and carrying of contraband. Providing surveillance footage to the public would, in Pevey's opinion, leave DOC offices and staff vulnerable to security breaches, an especially pressing concern in light of recent arson attempts, vandalism of vehicles, and smashed exterior windows.

Connor Green filed a motion to strike Pevey's declaration and impose CR 11 sanctions on DOC, asserting that the declaration was plagiarized and that Pevey had no actual personal knowledge of any of the facts he attested to. Connor also filed a motion

to strike all references to the Pevey declaration from DOC's response, as well as all statements he believed to be prejudicial rhetoric. Brian Green also moved to strike Pevey's declaration but only did so after the trial court dismissed his complaint.

In both cases, the trial court considered the parties' motions and concluded that the requested records were exempt from disclosure under RCW 42.56.240(1), though not under RCW 42.56.420(2). The trial court found that the surveillance video constituted specific intelligence information and concluded that nondisclosure of the video footage is essential for effective law enforcement, including the enforcement of community custody conditions. Brian Green moved for reconsideration, which the trial court denied.

The trial court denied Connor's motion to strike portions of DOC's response and his motion to strike Pevey's declaration and to impose CR 11 sanctions, finding there was no basis for either motion. The trial court denied Brian's motion to strike as moot.

The Greens each appealed the trial court's dismissal of their respective actions. We consolidated the appeals for review.

DISCUSSION

Standard of Review

Judicial review of agency actions taken or challenged under the PRA is de novo. Forbes v. City of Gold Bar, 171 Wn. App. 857, 863, 288 P.3d 384 (2012) (quoting RCW 42.56.550(3)). An appellate court reviews a trial court's PRA determination de novo "where the record consists only of affidavits, memoranda of law, and other documentary evidence" because it then "stands in the same position as the trial court." Progressive Animal Welfare Soc'y v. Univ. of Wash., 125 Wn.2d 243, 252, 884

P.2d 592 (1994).

An agency withholding public records bears the burden of demonstrating that the claimed exemption applies. Prison Legal News, Inc. v. Dep't of Corr., 154 Wn.2d 628, 636, 115 P.3d 316 (2005). "In determining whether the PDA requires disclosure, we must liberally construe its public records provisions and narrowly construe its exemptions." Lindeman v. Kelso Sch. Dist. No. 458, 162 Wn.2d 196, 201, 172 P.3d 329 (2007).

The Greens assert that DOC violated the PRA when it withheld the video footage they requested because the footage is not exempt. DOC withheld the requested video footage from the Greens claiming an exemption under RCW 42.56.240(1). This statute provides that the following records are exempt from public disclosure:

> [s]pecific intelligence information and specific investigative records compiled by investigative, law enforcement, and penology agencies, and state agencies vested with the responsibility to discipline members of any profession, the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy[.]

RCW 42.56.240(1).

We have previously analyzed this exemption in three parts: (1) whether the records constitute "specific intelligence information" or "specific investigative records," (2) whether the records were compiled by an investigative, law enforcement, or penology agency, and (3) whether nondisclosure of the records "is essential to effective law enforcement or for the protection of any person's right to privacy." See Haines-Marchel v. Dep't of Corr., 183 Wn. App. 655, 665-66, 334 P.3d 99 (2014). The parties do not dispute that DOC is a penology agency.

4

Specific Intelligence Information

The Greens assert that the video footage they requested is not "specific intelligence information" or "specific investigative records," and was therefore improperly withheld. The Greens argue that the video footage does not constitute intelligence information because the records were not "prepared in anticipation of any crimes," "compiled to prevent or monitor any criminal activity," or "compiled in the course of investigation of known or suspected crimes."

We have previously defined "intelligence information" as "gathering or distributing secret information, information about an enemy, or conclusions drawn from such information." West v. City of Tacoma, 12 Wn. App. 2d 45, 73, 456 P.3d 894 (2020) (citing King County v. Sheehan, 114 Wn. App. 325, 337-38, 57 P.3d 307 (2002)). Intelligence information is "specific" if it discloses particular methods, procedures, or analysis. Id. (citing Haines-Marchel, 183 Wn. App. at 668).

The requested video footage here was secret information that disclosed particular methods used by DOC. As Pevey explained in his declaration, the video footage in question would reveal the capabilities and limitations of DOC field office surveillance, as it would show where the cameras with recording capabilities were placed, the range of view of those cameras, and whether they had fixed or moveable fields of view. DOC policy is to keep that information secret, not only from the public, but also from the majority of its own employees. Given these facts, the trial court did not err in concluding that the video footage constituted specific intelligence information.

The Greens rely upon Does v. King County, 192 Wn. App. 10, 366 P.3d 936 (2015), to argue otherwise. However, Does did not analyze whether the records

constituted "specific intelligence information" because no exemption was claimed on that basis. Rather, the records were alleged to be exempt as "specific investigative records," Does, 192 Wn. App. at 25-26, an argument that DOC does not make in this case.[1] Does is not applicable here.

The trial court did not err by concluding that the requested video footage constituted specific intelligence information.

### Essential to Effective Law Enforcement

The Greens assert that the video footage they requested is not "essential to effective law enforcement," because "it is not used in any law enforcing capacity," nor is it essential. DOC argues otherwise, relying on Fischer v. Dep't of Corr., 160 Wn. App. 722, 254 P.3d 824 (2011) and Gronquist v. Dep't of Corr., 177 Wn. App. 389, 313 P.3d 416 (2013). We agree with DOC.

In Fischer, an inmate at Monroe Correctional Complex requested copies of surveillance video made by cameras in a particular building, at the time he was assaulted. 160 Wn. App. at 724. DOC denied the request, claiming that the video was exempt under RCW 42.56.240(1). Id. The inmate then filed an action for violation of the PRA. Id.

In response to the inmate's claim, DOC submitted the declaration of its director of the prison division and former prison superintendent, Richard Morgan. Id. at 726. Morgan explained that surveillance video provides intelligence information that is used in prison investigations, prison infractions, and prosecutions, and that the cameras were essential for control of a population that is "100% criminal" and accustomed to evading

---

[1] For this reason, the Greens' argument that DOC failed to provide evidence that it used its surveillance footage in investigations is also irrelevant.

detection. Id. Morgan further explained that providing inmates with access to surveillance video would allow inmates to assault fellow inmates or commit crimes and infractions without detection. Id. at 726-27. Given the facts contained in Morgan's declaration, this court held that "[c]oncealment of the full recording capabilities of [surveillance] systems is critical to its effectiveness in the specific setting of a prison." Id. at 728. We later reaffirmed this holding in Gronquist, a case with nearly identical facts. 177 Wn. App. at 400-01.

The Greens attempt to distinguish Fischer and Gronquist, asserting that the holdings apply only to surveillance videos created in prisons, whereas here, the requested video was created in a field office. Although there are differences between prisons and DOC's field offices, those differences are not as substantial as the Greens argue, nor do they compel a different result.

In both prisons and field offices, DOC is responsible for the supervision of persons who have been convicted of crimes, a function that is "law enforcement" under the plain meaning of the term. As Pevey articulated in his declaration, the primary function of DOC's field offices is the supervision of individuals serving community custody terms.[2] Like those in total confinement, Pevey explained that this population is "100% criminal in its composition and is accustomed to evading detection and exploiting the absence of authority, monitoring, and accountability." In Pevey's experience, even the appearance of surveillance is a powerful tool in deterring bad behavior by this

_____

[2] The Greens assert that the trial court failed to "scrutinize" Pevey's declaration and failed to properly consider their criticism of Pevey's testimony. The trial court's dismissal orders in both cases clearly indicate that it considered all of the materials submitted to it. In the order dismissing Connor's case, the court additionally stated that it would not adopt Connor's argument that Pevey's declaration was inadequate or filled with unsubstantiated hearsay. Accordingly, the Greens fail to demonstrate that the trial court failed to consider their arguments.

population. Although the Greens argue that DOC field offices may also be visited by people not on community custody, the same is equally true of prison facilities. See RCW 72.09.060 (providing for public involvement in corrections programs). The presence of visitors and volunteers at prisons did not factor in our analysis in Fischer and Gronquist, nor is this fact significant in this case.

Pevey also stated in his declaration that DOC's concern for the safety of its employees and their continued ability to perform their job functions was more than theoretical, as it had recently experienced attempted arson, vehicle vandalism, and broken/smashed exterior building windows at its field offices. In response, Connor Green points to DOC's discovery responses, which identified only one occasion where a crime of attempted arson or vandalism was investigated at the Lacey field office. We do not believe it is necessary for DOC to prove that its employees were the victims of a crime in order to prove that the secrecy of its surveillance footage is essential to effective law enforcement. As DOC articulated, the purpose of keeping its surveillance footage secret is to deter crimes, a purpose that would be entirely defeated if it needed to permit crimes to occur before it could invoke the public records exemption.

In short, the Greens articulate no legal basis for us to depart from our holdings in Fischer and Gronquist. The trial court did not err by concluding that secrecy of the video footage was essential to effective law enforcement and therefore exempt from disclosure under RCW 42.56.240(1).

<u>Appellant's Additional Arguments</u>

The Greens also make various policy arguments about why the video footage should be released to them. As explained herein, these arguments are without merit.

First, the Greens argue that their right to access DOC field office surveillance footage is protected by the First Amendment of the United States Constitution, as well as article I section 5 of the Washington Constitution. Neither of the Greens made this argument to the trial court. Generally, we will not consider issues raised for the first time on appeal. RAP 2.5(a). A party may claim an error for the first time on appeal if it concerns "(1) lack of trial court jurisdiction, (2) failure to establish facts upon which relief can be granted, [or] (3) manifest error affecting a constitutional right." RAP 2.5(a). Because neither the federal nor the state constitution compels the government to supply records, King County Dep't of Adult & Juvenile Det. v. Parmelee, 162 Wn. App. 337, 358, 254 P.3d 927 (2011), the Greens cannot demonstrate that the trial court committed a manifest error affecting a constitutional right. Accordingly, the Greens have waived this argument.

The Greens further argue that the trial court's decision violates the legislative intent for DOC, as articulated in RCW 72.09.010. The Greens cite no authority in which this statute has any bearing on whether particular public records are exempt from disclosure.[3]  We will "not address issues that a party neither raises appropriately nor discusses meaningfully with citations to authority." Saviano v. Westport Amusements, Inc., 144 Wn. App. 72, 84, 180 P.3d 874 (2008) (citing RAP 10.3(a)(6)). We decline to consider the Greens' underdeveloped argument any further.

Additionally, the Greens urge this court to examine the legislative intent behind RCW 42.56.240(1), as articulated in the statute's legislative history. The Greens did not

---

[3] Even if RCW 72.09.010 were relevant to the Greens' appeal, it would undermine, rather than support, their argument. See RCW 72.09.010(1) ("The system should be designed and managed to provide the maximum feasible safety for the persons and property of the general public, the staff, and the inmates.") (emphasis added).

make this argument in the trial court proceedings. Because the asserted error does not affect a constitutional right, the Greens have waived this argument.

Order on Motion to Strike

The Greens assert that the trial court erred by denying their respective motions to strike the declaration of Mac Pevey. Connor Green additionally asserts that the trial court erred by denying his motion for CR 11 sanctions.

We review a trial court's decision on a motion to strike for an abuse of discretion. Farmer v. Davis, 161 Wn. App. 420, 431, 250 P.3d 138 (2011). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997).

Affidavits and declarations must be made on personal knowledge and set forth such facts as would be admissible in evidence. See CR 56(e); ER 602. The Greens argue that Pevey's declaration was inadmissible because it was not based on his personal knowledge, was "plagiarized," and contained multiple false statements. Pevey states in his declaration that he currently has overall responsibility for DOC's community corrections division and has previously held multiple positions within the community corrections division. Pevey's work experience demonstrates his familiarity with community corrections and the field offices in which that division works. The Greens' assertion that Pevey's declaration is not based on his personal knowledge is without merit. As for the Greens' contention that Pevey was not truthful in his declaration, this argument goes to the declaration's weight, not its admissibility. Cf. State v. Russell, 125 Wn.2d 24, 55, 882 P.2d 747 (1994) (self-interest in testimony went to testimony's weight, not admissibility). The trial court did not abuse its discretion by denying the

motions to strike.

Similarly, the trial court did not abuse its discretion by denying Connor's motion for CR 11 sanctions. "CR 11 imposes requirements on attorneys who sign and file any 'pleading, motion, or legal memorandum'." Bryant v. Joseph Tree, Inc., 119 Wn.2d 210, 218, 829 P.2d 1099 (1992). In his motion, Connor sought CR 11 sanctions against DOC's counsel for filing Pevey's declaration. A declaration is not a "pleading, motion, or legal memorandum" and is not subject to CR 11. Clare v. Telquist McMillen Clare PLLC, 20 Wn. App. 2d 671, 689, 501 P.3d 167 (2021). Thus, the court's conclusion that there was no basis for CR 11 sanctions was correct.[4]

CONCLUSION

We affirm the judgment of the trial court.

_____
Coburn, J.

WE CONCUR:

_____
Díaz, J.

_____
Smith, J.

---

[4] The Greens have both filed a motion to modify the Commissioner's ruling denying their respective motions to supplement the record. Having considered both motions under RAP 17.7, we hereby deny both motions.